FILED
IN CLERK'S OFFICE
US DISTRICT COURT

IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 0 4 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA,    :

    :

    :

    :

    -against-    :

    :

    :

    :

ROBERT DILEO,    :

    :

    Defendant.    :

------------------------------------------------------------ x

MEMORANDUM & ORDER

12-CR-260 (ENV)

VITALIANO, D.J.

Defendant Robert DiLeo pled guilty to one count of possession of child pornography in violation 18 U.S.C. § 2252(a)(4)(B). Save for the open question of restitution, he was sentenced on June 27, 2014. Restitution remained open because one of the victims depicted in the pornographic materials, "Vicky,"[1] who has retained counsel, is actively seeking restitution in this case, as she has in many similar prosecutions across America. In accord with 18 U.S.C. § 2259 and *Paroline v. United States*, 134 S. Ct. 1710 (2014), and notwithstanding Vicky's right to be heard through the Crime Victims' Rights Act, 18 U.S.C. § 3771, it is the government's burden to establish the restitution amount on behalf of the victim. For the reasons that follow, the Court, after an opportunity for all sides, including

---

[1] To preserve her confidentiality, the Court will use the pseudonym "Vicky" to refer to the victim portrayed in the pornographic videos. Given that the pseudonym "Vicky" is used by law enforcement to identify a single source of images, that same pseudonym is borrowed by courts grappling with this victim's restitution demands.

Vicky's counsel, to be heard, orders defendant to pay $2000 in restitution to Vicky, who is the only identified victim of the crime of conviction.

Background

The following facts are taken from the indictment, plea allocution, all medical and psychiatric records and reports submitted in connection with sentencing, the pre-sentence report prepared by the Probation Office, and the affidavit of loss submitted by Vicky's counsel. The material facts are straightforward and undisputed by contrary evidence.

In September, 2011, an agent with Homeland Security Investigations ("HSI") downloaded a video containing child pornography from DiLeo's computer over a peer-to-peer file-sharing system.[2] HSI agents subsequently obtained a search warrant for defendant's residence in Queens. On November 8, 2011, the agents executed the warrant and searched DiLeo's home, seizing, among other things, a Hewlett Packard Tower desktop computer from an office on the first floor of the residence.

The agents conducted a preliminary search of the computer at DiLeo's residence, and found several videos on the hard drive containing child pornography. One of these videos was titled "Vicky willing bed rape pthc 11yo3.mpg." An HSI agent played the video and confirmed it was, indeed, a horrific film depicting Vicky,

---

[2] A peer-to-peer file sharing system utilizes a program that allows files on one user's computer to be shared with other users of other computers with the same program. This program allows users to upload and download various files from each other's computers. Peer-to-peer programs are, regrettably, often used to exchange still images and videos of child pornography.

then a pre-pubescent girl, being sexually assaulted by an adult male.

Defendant was present during the execution of the search warrant, and agreed to speak with the agents. He told them that he lived at the residence, owned the computer, and had downloaded child pornography to his computer over Limewire, which is a peer-to-peer file sharing program, was installed on that computer. (Limewire is a recurring presence in child pornography cases.)

The HSI agents showed DiLeo several videos, including the one featuring Vicky, and he acknowledged that he had downloaded them to his computer over Limewire. He further admitted that he knew the videos contained child pornography, which he also said he knew was illegal to possess. Based on these facts and a later forensic examination of the computer, defendant was arrested and indicted by a grand jury on several counts of distribution and possession of child pornography.

On October 12, 2012, defendant pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), pursuant to a written plea agreement. A sentencing hearing was held on June 27, 2014. During the period between defendant's guilty plea and the sentencing hearing, the Supreme Court decided *Paroline v. United States*, 134 S. Ct. 1710 (2014), which, essentially, held that § 2259 requires a sentencing court to order restitution to an identified victim of the subject child pornography crime, but only after a showing by the government that the defendant was the proximate cause of that victim's past or continuing losses. In line with that holding, the Court directed both sides to submit further briefing on

3

the issue of what amount of restitution, if any, was proper in this case. Vicky's counsel had made a filing in pursuit of restitution prior to sentencing which was supplemented for purposes of the restitution hearing. The United States Probation Office was invited to provide independent comment on the issue. On September 5, 2014, a restitution hearing was convened.

### The Right to Restitution

Title 18 U.S.C. § 2259 is cut from the same statutory cloth that empowers the sentencing court to award restitution in almost all cases. By its terms, the section is limited to certain crimes involving child pornography, including the crime of possession. Section 2259 obligates the sentencing court to order restitution on behalf of an identified victim, and to "direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court." 18 U.S.C. § 2259(b)(1). The statute goes on to define the "full amount of the victim's losses" to include:

> (A) medical services relating to physical, psychiatric, or psychological case;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense

18 U.S.C. § 2259(3). The words creating the remedy signal breadth but do not obviate a showing of causality.

As noted earlier, in the months before DiLeo's sentencing, the Supreme Court

decided *Paroline, supra,* which sought to come to grips with causation. Specifically, the *Paroline* court considered the extent to which § 2259 requires a causal link between a defendant's criminal conduct and the victim's actual losses. The Court held, in a less straightforward forumlation than it appears, that "[r]estitution is . . . proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." 134 S. Ct. at 1722. The Court, consistent with this overarching conclusion, rejected the victim's contrary contention that no proximate cause showing was required. *Id.* at 1720. But, the Court also rejected the defendant's proposal of classic, "but for" causation. *Id.* at 1727. Instead, in a common law gloss, the Court announced the following rule, apparently limited to child pornography restitution cases:

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court properly applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id.* at 1727.

As might be expected, after unveiling its new *ad hoc* standard, the *Paroline* court acknowledged the obvious need to implement a corollary inquiry designed to answer "the question of how district courts should go about determining the proper amount of restitution." *Id.* at 1728. *Paroline* did provide some general guideposts by identifying factors to be considered in the newly-announced inquiry:

> [1] the number of past criminal defendants found to have contributed to the victim's general losses; [2] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; [3] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); [4] whether the defendant reproduced or distributed images of the victim; [5] whether the defendant had any connection to the initial production of the images of the victim; [6] how many images of the victim the defendant possessed; and [finally] any other facts relevant to the defendant's relative causal role.

*Id.*

Lastly, the Court also acknowledged that its new standard should not be read as one imposing a mathematical formula or algorithm, and that the accompanying list of "factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." *Id.* Without need for great prescience, the Court noted that its "approach is not without its difficulties . . . [b]ut courts can only do their best to apply the statute as written in a workable manner." *Id.* Throughout this process, of course, the "government . . . bears the burden of proving the amount of a victim's losses" by a preponderance of the evidence. *Id.* at 1729.

### Discussion

#### A. The Victim's Losses

The first step to be taken under the *Paroline* framework requires the government to establish by a preponderance "the amount of the victim's losses caused by the continuing traffic in the victim's images." *Paroline*, 134 S. Ct. at 1728. To this end, the government has provided an extensive submission compiled by Vicky's lawyers. Gov't Sentencing Memorandum, July 28, 2014, Dkt. 30 ("Gov't

Mem."), Ex. A. Included in the submission are numerous psychological evaluations

and reports, victim and family impact statements, and forensic economic projections

with analytical underpinnings. All told, the documentary submissions estimate

Vicky's total losses as a result of the trafficking in these images to be $1,084,053.29,

which includes $113,600 in future psychological counseling, $53,330 in educational

and vocational counselling needs, capturing in that amount lost part-time income

during school, $828,150 in lost future earnings, and $88,973.29 in out-of-pocket

costs. Gov't Mem. at 5.

     Moreover, cutting against the grain of the maxim that a party seeking to

recover for injury caused by the wrongful conduct of another is bound to mitigate

her damages, *see* Restatement (Second) of Torts § 918 (1979), Vicky's own

submission confirms that her attorneys "keep[ her] informed about the number of

notices she is receiving . . . [and, specifically, that] Vicky has recently been made

aware of [the] general fact that she has received a notice that was directly caused by

this particular defendant." Gov't Mem. at 4. Having the right not to be notified, *see,*

*e.g.*, *United States v. Turner*, 367 F. Supp. 2d 319, 332 (E.D.N.Y. 2005) (noting that

the Crime Victims' Rights Act "is phrased in the negative (i.e., the crime victim has

the right 'not to be excluded') rather than as an affirmative right"), that is, the right

not to receive confirmation that her image has been viewed again, Vicky has chosen

to receive such confirmatory notifications. She has done so, obviously,

notwithstanding that her victim impact statement makes clear that these continuing

notifications persist in contributing to her emotional and mental harm. For

7

example, in her updated impact statement, Vicky writes: "I am still having emotional and psychological problems due to knowing that the images of me being abused as a child are circulated freely on the internet." Gov't Mem., Ex. A, Updated Victim Impact Statement from 'Vicky' Series Victim, at 1. At the same time, knowledge of the continued viewing, which the notifications bring Vicky, is precisely the kind of continuing injury that *Paroline* squarely addresses and finds compensable. *See Paroline*, 134 S. Ct. at 1717 ("Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again.") The conflict between the two principles is sharp.

Although in another context, Vicky might be obligated to mitigate her future losses by opting not to receive continuing notifications, given the statutory purpose of the Crime Victims' Rights Act to empower victims, mitigation cannot be demanded here. At bottom, the Court finds that *Paroline*'s common law framework does not admit to forms of comparative causality assessment related to the victim's conduct. Whether some of Vicky's losses may be attributed to exacerbation by her desire to know of the offenders who have victimized her, such exacerbation cannot be used to diminish restitution. All of the losses caused by the trafficking must be attributed to the offenders, and not the victim. The Court, accordingly, finds that the victim has suffered the type of harm "caused by the continu[ed] trafficking in those images." *Id* at 127-28. The offenders alone must bear these losses and, as one of them, DiLeo must bear his share of the totality of the losses caused by the continued trafficking in Vicky's images.

DiLeo, moreover, does not seriously dispute these loss amounts or the fact that the continuing circulation of these images contributes to them, other than to observe that Vicky's loss calculation is based on "inexact predictions about the future." Letter Brief from Defendant, Aug. 11, 2014, Dkt. 31 ("Def. Ltr.") at 2. Suffice it that, on the evidence submitted in connection with sentencing and the determination of restitution, the Court finds that the government has established that the identified victim known as Vicky has suffered, and continues to suffer, losses which will equal or exceed the amount that the government claims and that, under *Paroline*, DiLeo's criminal conduct comprising the offense of conviction was a proximate cause of that continuing loss. *See United States v. Watkins*, No. 13-cr-268, 2014, WL 3966381, *6 (E.D. Cal. Aug. 12, 2014).

B. The Restitution Amount

Since DiLeo, by his own plea, "possessed [the] victim's images and [it has been established] that [the victim] has outstanding losses caused by the continuing traffic in those images," *Paroline*, 134 S. Ct. at 1727, the next step in the Court's analysis is to determine the proper amount of restitution chargeable to defendant. To say the least, determining what share of the total loss to order DiLeo to pay as restitution to Vicky is the hard part. Though commentators may quarrel over the astuteness of the Supreme Court's professed confidence in the skill of the district courts to divine a true course through this thicket, and whatever the value of the balm its words of praise provide, *see Paroline*, 134 S. Ct. at 1729 ("[t]here is no reason to believe [district courts] cannot apply the causal standard defined above in

9

a reasonable manner without further detailed guidance at this stage in the law's elaboration . . ."), the task seems akin to piloting a small craft to safe harbor in a Nor'easter. With the bulk of compensable loss long suffered, with potential responsible parties at varying levels of criminal culpability (from physical participant, to producer, to distributor, to consumer/voyeur), to catch as catch can prosecutions and the logical construct that the totality of restitution cannot exceed the totality of actual loss suffered by the identified victim, it is a struggle to conceive of a system that will not exceed loss and perhaps trigger creation of a judicial clearinghouse, where the courts become unseemly paymasters smoothing out restitution contributions among pornographers. The task of charting passage through these unknown waters is overwhelming.

Bluntly, the Court finds itself among the growing throng of district courts which "have expressed their concern with the lack of precise guidance from Congress and the Supreme Court in deciding restitution awards in these circumstances." *United States v. Miner*, No. 14-cr-33, 2014 WL 4816230, *5 (N.D.N.Y. Sept. 25, 2014); *see also United States v. Crisostomi*, No. 12-166, 2014 WL 3510215, *2 (D.R.I. July 16, 2014) (explaining that "while some of the *Paroline* factors are determinable with some precision, a number of other factors are virtually unknown and unknowable, regardless of the detail available in the record"). Nevertheless, as *Paroline* directs, the Court must do its best to apply the statute mandating restitution with *Paroline*'s common law gloss that expands broadly the causality standard that traditionally had applied in determining

10

restitution. *Paroline*, 134 S. Ct. at 1729. To be sure, as the following application of the remaining *Paroline* factors shows, the result is far less than satisfying:

<u>Past Criminal Defendants</u>

According to the Department of Justice, 475 defendants have been ordered to pay restitution to Vicky, as of May 7, 2014. Gov't Mem. at 5, Ex. B. These defendants, combined, have been ordered to pay more than $10 million in restitution to Vicky. Gov't Mem, Ex. B. The largest single order of restitution was entered, according to the government's submission, in the amount of $1,330,015.75. *United States v. Vega*, No. 11-cr-1446 (S.D. Tex. Nov. 29, 2012). The lowest amount ordered was $50. *United States v. Seiley*, 10-cr-192 (S.D. Ohio Jul. 31, 2012). To date, Vicky has actually received $599,164.41 in restitution payments. Gov't Mem. at 5. Put differently, in the unlikely event that all of these orders of restitution are satisfied, without a penny from DiLeo, "restitution" would far exceed Vicky's self-calculated losses. Yet, if nothing else, this data is solid and accepted as proven.

<u>"Reasonable Predictions" and "Reliable Estimates"</u>

The next *Paroline* factor asks sentencing courts to make "reasonable predictions" of the number of defendants who will face future prosecution in connection with the trafficking in Vicky's pornographic images and to make as well an estimate of offenders who will traffic in these images but will escape detection. The government's evidentiary tank has come up empty on this score. Frankly, other than providing a tabulation for defendants under indictment and investigations underway at any fixed moment, the proffered number would be the sheerest of

speculation. In the absence of joint and several liability, which *Paroline* forbids in this context, 134 S. Ct. at 1728-29, such information is essential to any system of restitution which purports to assess an individual offenders fair share of the total continuing losses, only a part of which is, by definition, proximately attributable to him. Far from a one case failure of proof by the government, this shortcoming affecting the calculation here seems endemic. Across the board, the government appears unable (and it is easy to see why) to provide "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)." *Id.* at 1728. Indeed, it is hard to fathom how, at any given point in time, such estimates and predictions could be more than a wild guess. *See United States v. Reynolds*, No. 12-20843, 2014 WL 4187936, *6 (E.D. Mich. Aug. 22, 2014). All that can be said reliably is that the number of individuals who view these images will increase at some rate in the future. But because any "prediction" or "estimate" of this rate would be sheer speculation, "[t]hese factors . . . do not impact the restitution award[] in this case," *Id.*, except to suggest that the 476 offenders the government advances is less than the number *Paroline* says must be held accountable. A component critical in computing DiLeo's proportionate restitution obligation –the number of other contributors -- therefore, lies unproven except that it is higher than the number of offenders subject to restitution advanced by the government.

### Distribution of Images

Although DiLeo was indicted on distribution and possession of child

12

pornography charges, he pled guilty only to a single possession count. Minute Entry, Oct. 12, 2012, Dkt. 15. The government contends, nonetheless, that DiLeo did in fact distribute the images because an HSI agent was able to download them from Limewire, a fact which is documented and beyond dispute. Gov't Mem. at 5-6. Clearly, defendant's interaction on Limewire could have facilitated such distribution, and, though not the crime of conviction, it is the type of associated aggravating circumstance that a court could consider in fashioning a sentence for the crime of conviction. 18 U.S.C. § 3553(a)(1).[3] The government, however, has not produced any evidence showing that DiLeo actually distributed these images to anyone outside of law enforcement. In fact, though invited by the Court to do so, the government was unable to present any evidence at the restitution hearing that any images were downloaded from DiLeo's computer by anyone else, much less that they are images of Vicky.

The absence of such proof is significant because, despite observing that "a straightforward reading of § 2259(c) indicates that the term 'a crime' refers to the offense of conviction," *Paroline*, 134 S. Ct. at 1720, this point still appears muddled. It would seem that the Court should confine its loss analysis solely to DiLeo's crime of conviction, that is, simple possession. Yet, *Paroline* has added a common law gloss on what the restitution statute requires in "this context" when considering

---

[3] Defendant offers the contrary view that the Court can only consider the charge he was convicted of, and, therefore, cannot consider whether DiLeo distributed the images to others. Def. Ltr. at 2.

causality. Perhaps that gloss also signals that, just as in considering the imposition of sentence, the restitution court can broaden its focus to include related conduct, that is, conduct beyond the crime of conviction if that related conduct bears on the defendant's total role in the continued trafficking in the victim's images, which *Paroline* says is what triggers his responsibility for restitution in the first place. Here, at any rate, it is an academic point, since the government has proved no such conduct by DiLeo. This case, like many of its sad companions the Court has seen, is one of possession and voyeurism, but not distribution.

## Connection to Initial Production

The government's investigation has shown, and it proffers to the Court, that "defendant did not participate in the initial production of 'Vicky's' images." Gov't Mem. at 6. Failing proof of either production of distribution, DiLeo is on the lower rungs of culpability for Vicky's losses.

## Number of Images

DiLeo possessed one video of Vicky. This factor keys to numerosity. There has been widespread dissatisfaction with punishment calibrated to the number of pornographic images found. That dissatisfaction was underscored by the Second Circuit in *United States v. Dorvee*, 616 F.3d 174, 187(2d Cir. 2010). At any rate, it is fair to say that the single video of Vicky that DiLeo possessed was probably the equivalent of other possessors who have been, or who are to be, held responsible for Vicky's loss. It has, the Court finds, no effect on the restitution award as either an aggravating or mitigating factor.

14

## Synthesis of *Paroline* Factors

Having set out and weighed the various *Paroline* factors, all that remains is the determination of the appropriate restitution amount to be ordered. The government, defendant, Probation, and Vicky's attorneys have each filed separate submissions and each urges a different restitution amount. All agree that, after *Paroline*, some amount of restitution by DiLeo must be ordered.

The government's proposal, which finds harmony with approaches adopted by several district courts, offers that the analysis begin by dividing Vicky's total losses, $1,084,053.29, by the total number of defendants so far ordered to pay restitution, 475, plus DiLeo, for a total of 476. This, the government argues, acts as a starting point in calculating DiLeo's "relative causal role" in Vicky's losses. Gov't Mem. at 6. The government, however, has made no showing as to how DiLeo's role compares to the roles played by the other 475. Mathematically, in any case, the result of simple division is $2277. From this launch point, the government argues that aggravating factors, namely that the video was available for distribution and that its content was of a "sadistic nature" support an increase in defendant's proportionate share. As enhanced, the government seeks restitution of $3500.[4]

---

[4] The government seeks, over any base share, an additional $1223 for Vicky on account of the "sadistic" nature of the video DiLeo possessed. Gov't Mem. at 6. But it is difficult to imagine any sort of child pornography that isn't fairly categorized as "sadistic," that is, showcasing "the tendency to derive pleasure, especially sexual gratification, from inflicting pain, suffering or humiliation of others." New Oxford Am. Dictionary (2001). It would be imprudent, to say the least, for this Court to peg this particular depiction of child pornography as being any more or less reprehensible than the next. The point is that *all* depictions of child pornography, by their very nature, are extraordinarily sadistic,

Defendant objects that "simply dividing claimant's losses evenly by the 476 defendants ... overstates the proper restitution amount ..." Def. Ltr. at 1. DiLeo argues that the government's simple division starting point approach ignores "guideposts the Supreme Court in *Paroline* suggested, including not only others arrested but also 'reasonable predictions of the number of future offenders likely to be caught ...'" Def. Ltr. at 2. As a consequence, DiLeo concludes a more modest award of $1000 is appropriate, *i.e.* that allowing for future prosecutions and convictions as the "guideposts" direct, the fraction's divisor should be a little more than double the government's computed divisor of 476.

Probation advanced a nuanced approach. It advised the Court that it "concurs in part with both parties," but submits that $3000 in restitution would be "a more reasonable amount." Probation Memorandum, Aug. 19, 2014, at 2.

Finally, Vicky's attorneys have proposed, effectively, that the Court simply ignore *Paroline* and award $150,000 in compensatory loss along with $2500 in attorney's fees based on the proposed "Amy and Vicky Child Pornography Restitution Act, S. 2301," which has been introduced in the United States Senate. That suggestion swims against a torrent. First and foremost, S. 2301 is a bill in committee, and not a law. Furthermore, although titled a restitution act, the proposed legislation is anything but the sort. The proposed legislation, which would

---

which is why their continuing distribution causes great harm, and accompanying losses, to their victims. Any attempt to compare these depictions would necessarily become arbitrary. The sadistic nature of the images must be captured in the base computation rather than a sometimes-present aggravating circumstance.

amend § 2259, appears to conflate restitution with a fine, requiring courts to impose on each defendant an order to pay "mandatory restitution" to the victim in either the full amount of the victim's losses, but not less than a minimum amount of $250,000, $150,000, or $25,000 upon each conviction for production, distribution, or possession of child pornography, respectively. *Id.* § 3(c)(2). While the Court takes no position on the wisdom of this legislative approach, or even whether it is within the constitutional power of Congress to enact, it is crystal clear that the scheme S. 2301 proposes is so far removed from the traditional concepts of restitution and out of harmony with the dictates of the Supreme Court in *Paroline*, that, absent statutory enactment, it cannot be used to model the common law development of restitution in the child pornography context.[5]

Consequently, in the aftermath of *Paroline*, after careful consideration of the various approaches offered in this case by the interested parties as well as others fashioned by various district courts, the Court concludes that the most workable and reasonable approach to apportioning shares of a victim's losses must begin with a simple division of quantities known at the time of apportionment. Thus, the Court divides Vicky's proven total losses, $1,084,083.29, by the number of convicted defendants with restitution orders, 475, to which the subject defendant is added, for

---

[5] Traditionally, the remedy of restitution is not hinged to any recidivism or level of culpability factor, but focuses on "full or partial *compensation* [to be] paid by a criminal to a victim . . ." for actual losses. Black's Law Dictionary 1507 (10th ed. 2014) (emphasis added). Yet this proposed legislation establishes an arbitrary loss schedule having no essential relevance whatsoever to the loss amounts suffered by the victim or to the individual defendant's role in causing them.

a total of 476. The result is $2277.42. The Court considers further, however, that this quotient, if adopted whole hog would effectively nullify other *Paroline* factors. However, here, there is, plainly, a failure of proof as to almost all of those other factors, except that it is obvious that the number of offenders (subsequently caught or not) who should share in the restitution burden will increase (decreasing the proportional share) and that continuing therapy for Vicky might exceed forecasts and cause the loss amount to increase (increasing the proportional shares).

It is, further, helpful to note that, confronted similarly with a hopelessly barren record as to the *Paroline* factors not proved in this case, other courts have embraced a simple division sort of an approach to computing restitution. *See, e.g., Watkins*, 2014 WL 3966381, at *7 (dividing Vicky's total losses by the number of offenders), *United States v. Hernandez*, No. 11-cr-0026, 2014 WL 2987665 (E.D. Cal. June 30, 2014) (same). Each one has concluded, at least implicitly, that similar restitution amounts resulting from such calculations are in keeping with the Supreme Court's admonition that child pornography restitution awards not be token or trivial. *See United States v. Rogers*, 758 F.3d 37 (1st Cir. 2014) (finding a restitution award of $3150 appropriate under *Paroline*). Perhaps most importantly, these decisions affirm the understanding that *Paroline* requires the imposition of a restitution award even where the proof of many of the factors the same holding teaches are to be the bases of the calculation of such awards are wholly lacking. The absence of proof, in short, is not a dead end.

Though rare, it is not unprecedented that public policy advancing the award

18

of damages to the victim of wrongdoing can be so strongly held that damages can still be awarded to such a victim of the breach of that policy even though the victim cannot meet his burden to establish by a preponderance proximately caused losses in a traditional sense. For example, the Fair Debt Collection Practices Act authorizes courts to award victims damages of up to $1000 in cases where the victim cannot prove any actual loss proximately caused by the proven violation. 15 U.S.C. § 1692k(a)(1)(2)(A). The situation is somewhat analogous here, though the right to recovery without proof of proximate cause or, more precisely, the factors effectively identified as a substitute for traditional proximate cause is not express in the statute. *Paroline*'s common law gloss, as its progeny suggests, obligates restitution courts to apply the restitution statute in that manner.

It is clear, in sum, that failure in the kind of proof *Paroline* prescribes cannot be the hobgoblin that defeats the mandate to enter *some* non-trivial restitution award merely upon proof of loss related to the continued trafficking in the pornographic images taken of the victim as a child. That, exactly, is what the Court confronts here. DiLeo's crime is quite of the ordinary variety falling under the purview of *Paroline*. In other similar ordinary cases, that is, lacking proof of most Paroline factors, resort was made first and foremost to some type of simple division of the known loss by the then known total number of responsible offenders. In these cases, where proof of other factors was unknowable and, therefore, unavailable, those courts have provided common law precedents effectively setting a benchmark methodology for the calculation of non-token restitution awards as *Paroline* requires

in child pornography cases. In cases involving Vicky, that methodology has produced restitution awards in the $2000 to $4000 range. In this instant ordinary case where Vicky is the identified victim, the Court is prepared to apply the benchmark range common law developments seem to have established.

Additionally, the Court is struck that, aside from the outlier approach urged by Vicky's counsel, the restitution awards suggested by defendant ($1000), Probation ($3000), and the government ($3500) are all within or close to that very range. It should be noted further that Probation included in its computations values the Court found not established by the record. In any event, beginning with the simple division quotient of $2277.42 and modifying it slightly to correct for additional offenders currently in, or soon to be in, the prosecution pipeline, and considering that this is an ordinary case in which the record establishes that defendant's total role in the trafficking of the victim's images was his possession of a single video containing those images, the Court will enter a restitution award in the amount of $2000. The award is consistent with, and the Court is guided by, the benchmark for child pornography restitution awards developing at common law. For those reasons, therefore, the Court also concludes that restitution in this amount also satisfies *Paroline*'s mandate that the award of restitution not be token or trivial.

## Conclusion

For the foregoing reasons, the Court, pursuant to 18 U.S.C. § 2259, orders that defendant pay restitution to "Vicky" in the amount of $2000.

The Clerk of Court shall enter that award in the Criminal Judgment entered

in this case.

        SO ORDERED.

Dated: Brooklyn, New York
        November 4, 2014

/S/USDJ VITALIANO

**ERIC N. VITALIANO**
**United States District Judge**